TROY LAW, PLLC
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and*
*potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Case No. 22-cv-06075

-----------------------------------------------------------------x

TAYLOR RAE HINE,
*on her own behalf and on behalf of others similarly*
*situated*

                          Plaintiff,

                         v.

INSOMNIA COOKIES;
KRISPY KREME INC
    f/d/b/a Krisy Kreme Doughnut of New York
    d/b/a Krispy Kreme;
SETH BERKOWITZ

                         Defendants.

-----------------------------------------------------------------x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

       Plaintiff TAYLOR RAE HINE (hereinafter referred to as Plaintiff), on behalf of herself and others similarly situated, by and through her attorney, Troy Law, PLLC, hereby brings this complaint against Defendants INSOMNIA COOKIES; and KRISPY KREME INC f/d/b/a Krisy Kreme Doughnut of New York d/b/a Krispy Kreme; SETH BERKOWITZ, and alleges as follows:

## **INTRODUCTION**

       1.     This action is brought by the Plaintiff TAYLOR RAE HINE, on behalf of herself as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiff alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) liquidated damages, (3) prejudgment and post-judgement interest; and or (4) attorney's fees and cost.

4.      Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that she is entitled to recover from the Defendants: (1) Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (2) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (3) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (4) 9% simple prejudgment interest provided by NYLL, (5) post-judgment interest, and (6) attorney's fees and costs.

5.      Plaintiff alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) Out of pocket expenses to delivery experts on the road, (2) liquidated damages, (3) prejudgment and post-judgement interest; and or (4) attorney's fees and cost.

6.      Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that she is entitled to recover from the Defendants: (1) Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (2) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (3) out of pocket expenses to delivery experts on the road, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (5) 9% simple prejudgment interest provided by NYLL, (6) post-judgment interest, and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

7.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Western District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

9.      From on or about October 26, 2019 to August 03, 2021, Plaintiff TAYLOR

RAE HINE was employed by Defendants to work as a Delivery Driver for Corporate

Defendant INSOMNIA COOKIES at one of Corporate Defendants store located at 1333

Mount Hope Avenue Rochester, NY 14620.

**<u>DEFENDANTS</u>**

*Corporate Defendants*

10.    Defendant INSOMNIA COOKIES is a domestic business corporation

organized under the laws of the State of New York with a principal address at 440 Park

Avenue South, 14th Floor, New York, NY 10016.

11.    INSOMNIA COOKIES is a business engaged in interstate commerce that has

gross sales in excess of five hundred thousand dollars ($500,000) per year.

12.    INSOMNIA COOKIES purchased and handled goods moved in interstate

commerce.

13.    Defendant KRISPY KREME INC d/b/a Krispy Kreme Doughnut of New York

is a Nationwide corporation that operates with a Headquarters located at 370 Knollwood

Street Winston-Salem, NC 27103.

14.    Defendant KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New

York d/b/a Krispy Kreme is also domestic business corporation organized under the laws of

the State of New York with a Service of Process Address located at 80 State Street, Albany,

NY 12207.

15.    KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New York d/b/a

Krispy Kreme is a business engaged in interstate commerce that has gross sales in excess of

five hundred thousand dollars ($500,000) per year.

16.    KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New York d/b/a

Krispy Kreme purchased and handled goods moved in interstate commerce.

*Owner/Operator Defendants*

17.     SETH BERKOWITZ the Owner and Founder, and CEO of INSOMNIA
COOKIES, (1) had the power to hire and fire employees, (2) supervised and controlled
employee work schedules or conditions of employment, (3) determined the rate and method
of payment, and (4) maintained employee records at INSOMNIA COOKIES; SERVE U
BRANDS INC.

18.     As the CEO of both Corporations SETH BERKOWITZ had operational
control over INSOMNIA COOKIES and over the activities of Plaintiff and actively manages
both corporations.

19.     SETH BERKOWITZ was responsible for retail at all the Insomnia Cookies
locations, obtaining FDA appoval and finding investors.

20.     SETH BERKOWITZ had and has the authority to make decisions that concern
the policies, operations and functions relating to Employement, Human Resources and Payroll
at INSOMNIA COOKIES.

21.     SETH BERKOWITZ acted intentionally and maliciously and is an employer
pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §
791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with
INSOMNIA COOKIES; KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New
York d/b/a Krispy Kreme

## STATEMENT OF FACTS

### Corporate Defendant INSOMNIA COOKIES Constitute an Enterprise

22.     INSOMNIA COOKIES operates over 100 stores located across the United

States.

23.     Corporate Defendant INSOMNIA COOKOES share materials and workers, including plaintiff between their locations.

24.     Plaintiff states that Jason Cupelo was the "Regional Planner of Rochester".

25.     Further, Plaintiff states that when materials ran short at their store drivers were sent to the Buffalo location to pick up materials to stock for their store.

26.     Additionally, Tori Pitkins, Brandon Pitkins, who were delivery drivers such as plaintiff worked between the Rochester and Buffalo locations.

### Corporate Defendant INSOMNIA COOKIES and KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New York d/b/a Krispy Kreme Constitute an Enterprise

27.     Upon information and belief, Corporate Defendants INSOMNIA COOKIES; KRISPY KREME INC f/d/b/a Krisy Kreme Doughnut of New York d/b/a Krispy Kreme constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners.

28.     At all times relevant herein, INSOMNIA COOKIES; and KRISPY KREME INC f/d/b/a Krisy Kreme Doughnut of New York d/b/a Krispy Kreme was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

29.     In 2018 KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New York d/b/a Krispy Kreme acquired Defendant INSOMNIA COOKIES.

30.     INSOMNIA COOKIES still operates independently but constitute as a subsidy of Corporate Defendant KRISPY KREME INC f/d/b/a Krispy Kreme Doughnut of New York d/b/a Krispy Kreme

31.     At all relevant times, the work performed by Plaintiff was directly essential to

the business operated by INSOMNIA COOKIES; and KRISPY KREME INC f/d/b/a Krisy

Kreme Doughnut of New York d/b/a Krispy Kreme.

### Wage and Hour Claims

32.     Defendants committed the following alleged acts knowingly, intentionally

willfully, and maliciously against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

33.     Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot

take credit towards the basic minimum wage if a service employee or food service worker has

not received notification of the tip credit.

34.     Upon information and belief, Defendants failed to keep full and accurate

records in order to mitigate liability for their wage violations. Defendants never furnished any

notice of their use of tip credit.

35.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to

provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates

of pay and payday as well as paystub that lists employee's name, employer's name, employer's

address and telephone number, employee's rate or rates of pay, any deductions made from

employee's wages, any allowances claimed as part of the minimum wage, and the employee's

gross and net wages for each pay day.

36.     Defendants did not post the required New York State Department of Labor

posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### *Plaintiff TAYLOR RAE HINE*

37.     From on or about October 26, 2019 to August 03, 2021, Plaintiff TAYLOR

RAE HINE was employed by Defendants to work as a Delivery Driver at 1333 Mount Hope

Avenue, Rochester, NY 14620.

38.     From on or about October 26, 2019 to August 03, 2021, Plaintiff TAYLOR RAE HINE's regular work schedule ran as follows:

   a.   From, 18:00 to 25:30 (01:30 the Next Morning) for Seven and a Half (7.5) Hours per day on Wednesday and Thursdays.

   b.   From, 18:00 to 27:30 (03:30 the Next Morning) for Nine and a Half (9.5) Hours per day on Friday and Saturdays.

   c.   For a total of thirty-four (34) hours each week.

39.     At all relevant times, Plaintiff TAYLOR RAE HINE did not have a fixed time for lunch or for dinner.

40.     From on or about October 26, 2019 to January 01, 2021, Plaintiff TAYLOR RAE HINE was paid a flat compensation at a rate of fifteen dollars ($15.00) per hour.

41.     From on or about January 02, 2021 to August 03, 2021 , Plaintiff TAYLOR RAE HINE was paid a flat compensation at a rate of sixteen dollars ($15.75) per hour.

42.     At all relevant times, Plaintiff TAYLOR RAE HINE was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

43.     Further, at all relevant times, Plaintiff TAYLOR RAE HINE had to take care of the cash register and clean the store.

44.     At all relevant times, Plaintiff TAYLOR RAE HINE's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

45.     Further, at all relevant times, Plaintiff TAYLOR RAE HINE had her tips misappropriated.

46.     For the final three weeks of Plaintiffs employment with Defendants, Plaintiffs noticed that there was a discrepancy in amount of tip that she saw on the online orders and

what she received in actuality on her personal check from Defendants.

47.     Throughout her employment, Plaintiff TAYLOR RAE HINE was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay.

48.     As part of Plaintiff's employment with Defendants, Plaintiff TAYLOR RAE HINE was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

49.     In delivering food to Defendants' customers, Plaintiff TAYLOR RAE HINE drives an average of 4 to 8 miles.

50.     Plaintiff TAYLOR RAE HINE was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

## COLLECTIVE ACTION ALLEGATIONS

51.     Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings her NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants

on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

53.     All said persons, including Plaintiff, are referred to herein as the "Class."

54.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

55.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

56.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

b.     Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

c.     Whether Defendants maintained a policy, pattern and/or practice of failing to

pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

      d.     Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

      e.     Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

      f.     Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

      g.     Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

      h.     At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

57.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

58.     Plaintiff is able to fairly and adequately protect the interests of the Class and

have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### *Superiority*

59.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion

methods to efficiently manage this action as a class action.

60.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and the Rule 23 Class]

61.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62.     The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL § 162.

63.     Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff worked.

64.     Though the Department of Labor commissioner may permit a shorter time to

be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

65.     Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

## COUNT II.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

66.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67.     Defendants did not maintain, establish and preserve Plaintiff's weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

68.     As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

69.     Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff in order to facilitate their exploitation of Plaintiff's labor.

70.     Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.

## COUNT III.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiff and Rule 23 Class]

71.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.     The NYLL and supporting regulations require employers to provide written

notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

73.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

74.     Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

75.     Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IV.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiff and Rule 23 Class]

76.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

78.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on

or after each Plaintiffs' payday.

79.     Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT V.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiff and the Class]

80.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81.     Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

82.     Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of her electricity delivery bicycle.

83.     The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

84.     Plaintiff purchased, maintained and repaired the electric bicycle at her own expense.

85.     Plaintiff performed these deliveries for the sole benefit of the Defendants.

86.     Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

87.     As a result of the afore-alleged conduct of the parties, an implied contract arose

between them the terms of which are that Plaintiff would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

88.     Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

89.     Defendants owe Plaintiff her overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

### COUNT VI.
### [[Defendants' Failure To Pay To Delivery Experts Working "On The Road" Brought on Behalf of Plaintiff and the Class]

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.     Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.

92.     Throughout the relevant period, Defendants required their delivery experts to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the *minimum* deductible costs of operating an automobile for business purposes.

93.     For 2012, the IRS Standard Mileage Rate is $0.555 per mile.

94.     For 2013, the IRS Standard Mileage Rate is $0.565 per mile.

95.     For 2014, the IRS Standard Mileage Rate is $0.560 per mile.

96.     For 2015, the IRS Standard Mileage Rate is $0.575 per mile.

97.     For 2016, the IRS Standard Mileage Rate is $0.540 per mile.

98.     For 2017, the IRS Standard Mileage Rate is $0.535 per mile.

99.     For 2018, the IRS Standard Mileage Rate is $0.545 per mile.

100.     For 2019, the IRS Standard Mileage Rate is $0.580 per mile.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)     Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)     Certification of this case as a collective action pursuant to FLSA;

c)     Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)      An award of liquidated and/or punitive damages as a result of Defendants'

willful and malicious failure to overtime compensation, and "spread of hours" premium

pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable

attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)      The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall

automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs
demand a trial by jury on all questions of facts.


Dated: February 11, 2022
          Flushing, New York

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)
Aaron Schweitzer (AS 6369)
Tiffany Troy (Bar ID 5881735)